TARIFA B. LADDON (SBN 240419)
Email: tarifa.laddon@faegrebd.com
**FAEGRE BAKER DANIELS LLP**
1990 S. Bundy Drive, Suite 620
Los Angeles, California 90025
Telephone: (310) 500-2090
Facsimile: (310) 500-2091

Attorneys for Defendants
ZIMMER HOLDINGS, INC.; ZIMMER, INC.; ZIMMER U.S., INC., AND JOE BISANT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE GHEZZI,<br><br>Plaintiff,<br><br>v.<br><br>ZIMMER HOLDINGS, INC; ZIMMER, INC.; ZIMMER U.S., INC.; ZIMMER PACIFIC; JOE BISANT; AND DOES 1 to 100,<br><br>Defendants. | Case No. 3:15-cv-00106 JAH (RBB)<br><br>**DEFENDANTS' NOTICE OF PRIOR OPPOSITION TO PLAINTIFF'S "RENEWED" MOTION TO REMAND**<br><br>**Current Hearing Date (unless vacated): Monday April 18, 2016**<br><br>Time: 2:30 PM<br><br>Courtroom: 13B<br><br>Hon. John A. Houston |

On March 9, 2016, Plaintiff filed a second Motion To Remand Action and Request For Fees And Costs. In response to this "renewed" motion, the defendants, Zimmer Holdings, Inc., Zimmer, Inc., Zimmer U.S., Inc. (collectively, "Zimmer"), and fraudulently joined Joe Bisant, state as follows:

1. Plaintiff already filed her original Motion To Remand on February 6, 2015. (Doc. 7.) Zimmer filed its Opposition to Plaintiff's motion on March 23, 2015, setting forth its arguments in favor of diversity jurisdiction. (Doc. 10.) Plaintiff filed her Reply on March 30, 2015. (Doc. 15.)

2. On April 1, 2015, the Court issued an Order vacating the hearing on the original Motion To Remand, informing the parties that it "deems the motion suitable for disposition without oral argument" and the Court "will issue its ruling on the motion in due course." (Doc. 16.)

3. On May 13, 2015, pursuant to an order from the Judicial Panel on Multidistrict Litigation (the "JPML"), this matter was transferred to the District Court for the Northern District of Illinois and consolidated with MDL No. 2272, *In re Zimmer NexGen Knee Implant Products Liability Litigation*. (*See* Doc. 20.) The JPML subsequently remanded the matter to this Court on July 15, 2015. (*See* Doc. 23.)

4. Rather than waiting for this Court to issue its ruling on her previous Motion To Remand, Plaintiff re-filed another, "renewed" Motion To Remand on March 9, 2016. Aside from describing the procedural background of this case's transfer to and from MDL No. 2272, the substance of Plaintiff's arguments appear identical to those raised in her original motion.

5. Accordingly, Zimmer and Joe Bisant hereby attach their previously filed Opposition to Plaintiff's original Motion For Remand, which details the legal and factual bases for Zimmer's removal of this case to federal court. (*See* Opp. Motion for Remand, Doc. 10, attached hereto as Exh. A.)

6. While Zimmer is willing to engage in oral argument should the Court request it, Zimmer acknowledges the Court's prior determination that the matter is suitable for disposition without a hearing and will await notice from the Court as to whether the April 18, 2016 hearing will be vacated.

Dated: April 4, 2016

**FAEGRE BAKER DANIELS LLP**
TARIFA B. LADDON

By: */s/ Tarifa B. Laddon*
TARIFA B. LADDON
Attorneys for Defendants
ZIMMER HOLDINGS, INC.;
ZIMMER, INC.; ZIMMER U.S., INC.,
AND JOE BISANT

# EXHIBIT A

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 1 of 15

**NORTON ROSE FULBRIGHT U.S. LLP**
JAN DODD (BAR NO. 214362)
LESLEY E. SWANSON (BAR NO. 271903)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
jan.dodd@nortonrosefulbright.com
lesley.swanson@nortonrosefulbright.com

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE GHEZZI,<br>Plaintiff,<br>v.<br>ZIMMER HOLDINGS, INC.; ZIMMER, INC.; ZIMMER U.S., INC.; ZIMMER PACIFIC; JOE BISANT; AND DOES 1 to 100,<br>Defendants. | Case No. 3:15-cv-00106 JAH (RBB)<br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND ACTION AND FOR FEES AND COSTS**<br>Date: April 6, 2015<br>Time: 2:30 p.m.<br>Courtroom: 13B<br>Judge: Hon. John A. Houston<br>Complaint Filed in State Court: September 11, 2014<br>Removed To Federal Court: January 16, 2015 |

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 2 of 15

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 2
II. ARGUMENT .......... 3
A. Standard of Review .......... 3
B. Plaintiff's Femoral, Tibial, and Tibial Articular Surface Components Were Unquestionably Compatible .......... 3
C. Joe Bisant's Limited Role in the Events At Issue Also Makes Liability Against Him Impossible .......... 10
D. The Court Should Deny Plaintiff's Request for Fees And Costs .......... 12
III. CONCLUSION .......... 13

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 3 of 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altman v. Ho Sports Co., Inc.*,
No. 1:09-CV-1000, 2009 WL 2590425 (E.D. Cal. August 20, 2009) .................... 12

*McCabe v. General Foods Corp.*,
811 F.2d 1336 (9th Cir. 1987) .................... 3

*Martin v. Franklin Capital Corp.*,
*546 U.S. 132,141 (2005)* .................... 12

*Morris v. Princess Cruises, Inc.*,
236 F.3d 1061 (9th Cir. 2001) .................... 3

*Ritchey v. Upjohn Drug Co.*,
139 F.3d 1313 (9th Cir. 1998) .................... 3

*TPS Utilicom Servs. Inc. v. AT&T Corp.*,
223 F. Supp. 2d 1089 (C.D. Cal. 2002) .................... 3

**Rules and Statutes**

Federal Rule of Civil Procedure 11(B) .................... 9

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 4 of 15

## I. INTRODUCTION

Defendants Zimmer, Inc., Zimmer Holdings, Inc., and Zimmer US, Inc. (d/b/a Zimmer Pacific), (collectively, "Zimmer") respectfully request that the Court deny the Motion To Remand Action To State Court And Request For Fees and Costs (the "Motion To Remand") filed by the plaintiff, Christine Ghezzi ("Plaintiff"). Plaintiff fraudulently joined Joe Bisant, a Zimmer sales representative, to destroy diversity and deprive this Court of subject matter jurisdiction. Absent Plaintiff's fraudulent joinder of Mr. Bisant, complete diversity exists between Plaintiff and Zimmer.

In her brief supporting the Motion To Remand (Doc. 7-1), Plaintiff alleges only a claim of negligence against Mr. Bisant. Plaintiff premises the negligence claim on an allegation that Plaintiff's surgeon and Mr. Bisant "templated" Plaintiff to receive a size C or D femoral component and a size 2 tibial component while analyzing her pre-operative x-rays. Plaintiff claims that these components were not compatible, according to Zimmer's labeling. But as Plaintiff and her counsel know, since they already litigated and lost on this very issue in a medical malpractice arbitration, Plaintiff's femoral component, tibial plate, and tibial articular surface were perfectly compatible and in accordance with Zimmer's FDA-cleared labeling. The compatibility of these components is an objective, undisputable fact, and one that makes it impossible for Plaintiff to recover from Mr. Bisant under her stated theories. Plaintiff and her counsel should know this, given the arbitration ruling and the fact that they have had the documents proving it for months, and they named Mr. Bisant as a sham defendant in an attempt to circumvent this Court's jurisdiction.

The Court should find that Mr. Bisant has been fraudulently joined and deny Plaintiff's Motion To Remand.

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 5 of 15

## II. ARGUMENT

### A. Standard Of Review

The principle that "fraudulently joined defendants will not defeat removal on diversity grounds" is well-accepted in law. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). A defendant is fraudulently joined when a "plaintiff fails to state a cause of action against [the] resident defendant and the failure is obvious according to the settled rules of the state . . . ." *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). A plaintiff fails to state a cause of action against a resident defendant when "there is ***no reasonable basis for imposing liability*** on the resident defendant." *See TPS Utilicom Servs. Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002) (emphasis added). In evaluating fraudulent joinder, the court may pierce the pleadings and consider summary judgment-type evidence such as affidavits and deposition testimony. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).

### B. Plaintiff's Femoral, Tibial, and Tibial Articular Surface Components Were Unquestionably Compatible.

No reasonable basis exists to impose liability on Mr. Bisant because all of Plaintiff's claims against him depend upon the alleged incompatibility of Plaintiff's femoral, tibial, and tibial articular surface components, and these components were compatible. Plaintiff alleges that Mr. Bisant engaged in multiple forms of conduct that resulted in her receiving the particular Zimmer components she did, but none of that conduct matters if her femoral, tibial, and tibial articular surface components were compatible, and they unquestionably were.

As a primer for the Court, total knee replacement surgery typically involves the implantation of four separate components: (1) a femoral component; (2) a tibial component or tibial "plate;" (3) a tibial articular surface that rests between the femoral component and tibial plate; and (4) a patellar component. These components are implanted in the arrangement shown below, which is a side view of a total knee replacement.



There is no dispute as to the Zimmer components that Plaintiff ultimately received during her September 13, 2012 total knee replacement surgery. Plaintiff's medical records contain "peel-n-stick" labels that identify precisely the name, product number, and lot number of each of her Zimmer components. These labels were provided to Zimmer by Plaintiff's counsel so that the company could respond to a non-party subpoena she issued in connection with Plaintiff's medical malpractice arbitration against her surgeon. (Meyer Declaration, Exh. A, ¶ 4.) The peel-n-stick labels for Plaintiff's femoral component, tibial plate, and tibial articular surface are depicted below and attached separately as a one-page exhibit. (*See* Medical Record of Product Identification, attached as Exh. 1 to Meyer Dec.).

**Femoral Component (Size D)**






**Tibial Articular Surface (Striped Purple – for use with <u>size C-H femoral components and size 1 and 2 tibial plates)</u>**




As evidenced by the peel-n-sticks from her medical records, Plaintiff received a **Size D** femur, a **Size 2** tibial plate, and a **"striped purple"** articular surface. When Zimmer produced documents in response to Plaintiff's non-party subpoena in the medical malpractice arbitration, that production included an "Urgent Corrective Action Notice" sent by Zimmer to its surgeon customers on March 16, 2012. (Meyer Dec., ¶ 5 & Zimmer Letter, attached as Exh. 2 to Meyer Dec.) Zimmer also produced a Zimmer *NexGen* Knee Profiler, which provided details on the knee replacement system received by Plaintiff. (Meyer Decl., ¶ 5.) Both of these documents contain a copy of the compatibility chart that Zimmer gives to surgeons so they can determine component compatibility. (*Id.*) Comparing component sizes received by Plaintiff to Zimmer's compatibility chart, it is plainly evident that Plaintiff's femoral component, tibial articular surface, and tibial plate were compatible.

Use of the compatibility chart is simple. First, find the size of the tibial plate used in Plaintiff, **size 2**, on the left side of the chart (see green line in chart below). Then, find the size of the appropriate femoral component used in Plaintiff, s**ize D,** on the top of the chart (see red line in chart below). Then, see where those two lines intersect, which will give the compatible tibial articular surface for those two components – in this case, a **"striped purple"** articular surface, which is precisely what Plaintiff received.




The compatibility chart demonstrates that Plaintiff received a perfectly compatible combination of a size 2 tibial component, a size D femoral component, and a "striped purple" tibial articular surface. Plaintiff's counsel has had a copy of this compatibility chart for months. The compatibility of these three parts is further demonstrated by the language on the "peel-n-stick" label from Plaintiff's "striped purple" articular surface, which expressly states that it can be used with size C-H femoral components, and size 1 and 2 tibial plates. (*See* Exh. 1 to Meyer Dec.)




Additionally, Plaintiff's counsel and her surgeon's counsel took the deposition of Mr. Bisant as part of the medical malpractice arbitration, and during the deposition, he explained that the three components received by Plaintiff were compatible. (*See* Meyer Decl., ¶ 6; Bisant Dep., attached as Exh. 3 to Meyer Dec., 78:9-79:21 & 81:24-84:19.) Finally, Plaintiff and her counsel also have a copy of Zimmer's March 16, 2012 Notice to surgeons, which Zimmer sent to remind surgeons to follow the compatibility chart and not mix "micro" size articular surface components with standard size femoral components. (*See* Exh. 2 to Meyer Dec.) The letter lists the forbidden combinations plainly on its first page. (*See id.*) The combination of components received by Plaintiff (size D femoral component and striped purple articular surface) is not on the list, which is depicted below.

- Solid purple CR articular surfaces should not be used with standard CR femurs.
- Solid purple CR articular surfaces should only be used with A-B **Micro** Femurs that are compatible with 1-2 Tibias.
- Striped yellow CR articular surfaces should not be used with standard CR femurs.
- Striped yellow CR articular surfaces should only be used with A-B **Micro** Femurs that are compatible with 3-4 Tibias.
- Outside US micro femurs may be available in sizes C-E- thus micro articular surfaces may be used with **micro** surfaces A through E

Plaintiff's brief contains a number of inaccuracies regarding the components she received. First, Plaintiff claims that a size 2 tibial component is a "micro" size component. (Pl.'s Br., p. 4.) That is misleading. As Mr. Bisant testified during his deposition, a size 2 tibial component can be used with both micro articular surfaces

(solid purple in the compatibility chart) and standard tibial articular surfaces (striped purple in the compatibility chart). (*Id.* at 79:15-21.) The compatibility of the size 2 tibial component with both "micro" and "standard" femoral components is also evident from the compatibility chart. (*See* compatibility chart above, showing that size 2 tibial components can be used with all sizes of femoral components). Thus, a size 2 tibial baseplate could only be classified as "micro" if it was being used with a micro articular surface (solid purple) and a micro size femoral component (size A & B). Plaintiff also claims that her surgeon implanted her with a "micro" tibial articular surface. That is incorrect. As shown in the compatibility chart, the "micro" articular surface that pairs with a size 2 baseplate and micro femoral components is "solid purple," and as the peel-n-sticks from Plaintiff's medical records demonstrate, she received a "striped purple," standard articular surface. (*See* Exhs. 1 & 2 to Meyer Dec.).

For months, Plaintiff and Plaintiff's counsel had: (1) Zimmer's compatibility chart; (2) Zimmer's March 16, 2012 letter reminding surgeons not to use incompatible micro articular surfaces with standard femoral components, and expressly listing only those incompatible combinations; (3) the deposition of Mr. Bisant, in which he testified that Plaintiff's femoral, tibial, and tibial articular surface components were perfectly compatible; and (4) most importantly, the decision from the arbitrator in the medical malpractice arbitration finding that her surgeon did not commit malpractice and explaining to Plaintiff that the femoral, tibial, and tibial articular surface components she received were compatible. Plaintiff's counsel's continued representation to this Court that Plaintiff's femoral, tibial, and tibial articular surface components were not compatible violates Federal Rule of Civil Procedure 11(b), which requires an attorney to represent and certify that a written motion's "factual contentions have evidentiary support…." Fed. R. Civ. P. 11(b). There is no evidentiary support for Plaintiff's counsel's representation to this Court that Plaintiff's

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 12 of 15

femoral, tibial, and tibial articular surface components were not compatible and in accordance with Zimmer's labeling.

Plaintiff's components were compatible, and their compatibility makes it impossible for Plaintiff to recover from Mr. Bisant. The Court should find that Mr. Bisant was fraudulently joined, and deny Plaintiff's Motion.

### C. Joe Bisant's Limited Role in the Events At Issue Also Makes Liability Against Him Impossible.

Plaintiff alleges that Mr. Bisant contributed to the implantation of incompatible components in the following ways: (1) by "templating" Plaintiff's x-rays to estimate the sizes of the femoral and tibial components that she would likely require on the day of her total knee replacement surgery; (2) by not discussing Zimmer's March 16, 2012 letter with Plaintiff's surgeon; (3) by ordering the components that would be available for the surgeon's use at Plaintiff's surgery; and (4) by simply participating in the sale and distribution of the Zimmer products. This alleged conduct cannot subject Mr. Bisant to liability under California law.

First, Plaintiff is correct that Mr. Bisant and his surgeon templated Plaintiff's x-rays before her total knee replacement surgery to determine what sizes she could potentially need. However, this templating process merely gives the surgeon an idea of the range of sizes that he might need at the surgery, so that he can ensure that they are available. Also the templating process only involves an estimation for the sizes of **two** of the four components that will be used in the surgery, the femoral component and the tibial component, as Plaintiff admits in her brief. (Pl.'s Brief, p. 4) ("Mr. Bisant and Plaintiff's surgeon templated Plaintiff as a size C or D for the femoral component…and a size 2 tibial component.") The selection of the actual four components and final sizes is the responsibility of the surgeon and is performed during the actual surgery, and Mr. Bisant was not present at the actual surgery, which took place at a later date. (Bisant Decl., Exh. B, ¶ 4.) Thus, Mr. Bisant cannot be responsible for the selection of the other two components, the articular surface and the

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 13 of 15

patellar component, as he took no part in that selection and was not present at the surgery when they were selected. Moreover, as discussed in the section above, all of this is moot anyway, since the femoral component, tibial component, and tibial articular surface implanted in Plaintiff were perfectly compatible.

Second, Plaintiff alleges that Mr. Bisant failed to inform Plaintiff's surgeon of the March 16, 2012 letter from Zimmer reminding surgeons to not mix standard femoral component sizes (C-H) with micro articular surfaces (*e.g.*, solid purple articular surfaces). (Pl.'s Br., p. 8) (*See* Exh. 2 to Meyer Decl.) But Mr. Bisant told Plaintiff's counsel during his deposition that Zimmer corporate took responsibility for informing the surgeons of the letter, sending it to them directly, and that it was not his duty. (Bisant Dep., 75:1-76:18.) More importantly, as the letter should make plainly apparent to Plaintiff and her counsel, **Plaintiff's femoral, tibial, and tibial articular surface components were perfectly compatible, making the letter a moot point**. Plaintiff's surgeon complied entirely with the instructions in the letter when he selected Plaintiff's femoral, tibial, and tibial articular surface components.

Third, Mr. Bisant did tell Zimmer Pacific's warehouse what components would potentially be needed for Plaintiff's surgery. However, because Plaintiff was templated as a size C femoral component prior to her surgery, every single size of every component was sent to the hospital and available for use by Plaintiff's surgeon; therefore, Plaintiff cannot claim that Mr. Bisant's conduct had any impact on what components the surgeon ultimately selected during Plaintiff's surgery. (Bisant Dep., 14:21-16:12) ("Q. So is it fair to say that there's usually all of the components for the entire system, from the smallest size to the largest size that's made, back in that room waiting for you to go and retrieve [for the surgeon] if necessary? A. Yes.") Plaintiff may contend that the patellar component she received was not compatible with the other components. But again, Mr. Bisant only templated the sizes of Plaintiff's femoral component and her tibial component, and he was not present at the surgery when her surgeon selected the patellar component he wanted to use. (Bisant Decl., ¶

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 14 of 15

4.) Furthermore, Plaintiff acknowledges that only her femoral component, articular surface, and tibial component were replaced during her revision surgery – which means the patellar component could not have caused her need for a revision surgery and remains implanted in her to this day. (Pl.'s Br., p. 5.)

Fourth, Plaintiff seems to argue that Mr. Bisant should be held liable simply because he participated in the sale of the Zimmer components and earned a commission on them. That argument has no merit under California law. Plaintiff bases her claim against Mr. Bisant on a theory of negligence, which requires a finding of fault on his part, and merely participating in a sale is not a tortious activity. And California law holds that merely working as a manufacturer's sales representative does not place a person within the scope of parties that can be held liable under non-negligence product liability claims. *See Altman v. HO Sports Co., Inc.*, No. 1:09-cv-1000, 2009 WL 2590425, at *3 (E.D. Cal. August 20, 2009).

In summary, Mr. Bisant's limited role in Ms. Ghezzi's surgery also precludes a finding of liability against him.

**D. The Court Should Deny Plaintiff's Request for Fees And Costs.**

When an objectively reasonable basis exists for removing a case, fees should be denied. *Martin v. Franklin Capital Corp.*, 546 U.S. 132,141 (2005). Zimmer has multiple objectively reasonable bases for removing this case: (1) the components that Plaintiff claims to be incompatible are compatible; and (2) the only non-diverse defendant named by Plaintiff has only marginal ties to the primary event at issue, Ms. Ghezzi's surgery, and no ties whatsoever to the design, manufacture, or labeling of the Zimmer components she received. Mr. Bisant was not present at Plaintiff's surgery and did not deliver products to her surgery. (Bisant Dec. ¶¶ 4, 5.) Mr. Bisant never spoke to or met Plaintiff prior to her surgery. (Bisant Dec. ¶ 6). Mr. Bisant has never been involved in the design, manufacturing, or labeling of Zimmer's medical device products. (Bisant Dec. ¶ 7.) He also did not participate in the creation of the marketing or advertising materials that Zimmer disseminates with respect to its

Case 3:15-cv-00106-JAH-RBB Document 10 Filed 03/23/15 Page 15 of 15

*NexGen* family of products. (Bisant Dec. ¶ 8.) He did not participate in the creation of the warnings that Zimmer prepares with respect to its *NexGen* family of products. (Bisant Dec. ¶ 9.) Finally, he did not participate in the determination by Zimmer or the U.S. Food & Drug Administration that certain products in the *NexGen* family are compatible with one another. (Bisant Dec. ¶ 10.)

Thus, the Court should deny Plaintiff's request for fees and costs.

## III. CONCLUSION

Plaintiff's putative claim of negligence against Joe Bisant, the only claim she raises against him, depends upon a finding that the femoral component, tibial articular surface, and tibial component Plaintiff received were incompatible. It is objectively indisputable that these components were compatible. Thus, no basis exists for imposing liability on Mr. Bisant, and he has been fraudulently joined.

The Court should deny Plaintiff's Motion To Remand and exercise jurisdiction of this case.

Dated: March 23, 2015

**NORTON ROSE FULBRIGHT U.S. LLP**

By: */s/ Lesley E. Swanson*

LESLEY E. SWANSON
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494
lesley.swanson@nortonrosefulbright.com

Attorneys for Defendants Zimmer Holdings, Inc.; Zimmer, Inc.; Zimmer U.S., Inc., and Joe Bisant.

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 1 of 26

# TABLE OF CONTENTS


| PAGES | EXHIBIT | DESCRIPTION |
|---|---|---|
| 15-37 | A | Declaration of Peter A. Meyer |
| 38-39 | B | Declaration of Joe Bisant |

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 2 of 26

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE GHEZZI,<br>Plaintiff,<br>v.<br>ZIMMER HOLDINGS, INC; ZIMMER, INC.; ZIMMER U.S., INC.; ZIMMER PACIFIC; JOE BISANT; AND DOES 1 to 100,<br>Defendants. | Case No. 3:15-cv-00106 JAH (RBB)<br>**DECLARATION OF PETER A. MEYER**<br>Complaint Filed in State Court: September 11, 2014<br>Removed To Federal Court: January 16, 2015 |

The undersigned, Peter A. Meyer, hereby declares as follows:

1. My law firm, Faegre Baker Daniels LLP, serves as national counsel for Zimmer, Inc.

2. I have personal knowledge of the circumstances surrounding Plaintiff's pursuit of a medical malpractice arbitration action against the Kaiser Health System and the orthopaedic surgeon who performed her total knee replacement, as well as circumstances surrounding Plaintiff's counsel's use of non-party subpoenas to obtain discovery from Zimmer, Inc., Zimmer US, Inc, and Joe Bisant in connection with that arbitration.

3. I represented Zimmer and Joe Bisant in connection with their responses to those non-party subpoenas. I also represented Mr. Bisant during his deposition in connection with Plaintiff's medical malpractice arbitration.

4. Plaintiff's Counsel, Suzanne Skolnick, provided me with a copy of the "peel-n-stick" labels that identify precisely the name, product number, and lot number of each of the components that were implanted in Plaintiff during her September 13, 2012 total knee replacement surgery. A true and accurate copy of the

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 3 of 26

page from Plaintiff's medical records containing those labels is attached as Exhibit 1 to this Declaration.

5. In response to Plaintiff's non-party subpoena in the medical malpractice arbitration, Zimmer produced a copy of a March 16, 2012 "Urgent Corrective Action Notice" sent by Zimmer to its surgeon customers. A true and accurate copy of that letter is attached as Exhibit 2 to this Declaration. Zimmer also produced a copy of a Zimmer *NexGen* Knee Profiler. Both of these documents contain a compatibility chart that Zimmer gives to surgeons so that they can determine component compatibility. The Urgent Corrective Action Notice also contains a list of all incompatible product combinations involving micro articular surfaces, and a list of all articular surfaces that are "micro" and therefore subject to the Notice. Neither the product combination received by Plaintiff nor the articular surface received by Plaintiff is listed in the Notice, and neither is affected by the Notice. That is because the articular surface received by Plaintiff, a "striped purple" articular surface, is not a "micro" component, and it is 100% compatible with the femoral component and tibial component received by Plaintiff.

6. A true and accurate copy of the relevant portions of the Deposition of Joe Bisant is attached as Exhibit 3 to this declaration.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on March 23, 2015

[signature]

Peter A. Meyer

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 4 of 26

FIN: 0009863 09/13/2012
GHEZZI, CHRISTINE
08/01/1949 63 Y F
Outpatient MR#: 02376790

**Femoral Component**

LOT 61294805 EDI: 00575001401 REF 00-5750-014-01
NEXGEN® COMPLETE KNEE SOLUTION
CR-FLEX GSF FEMORAL COMPONENT PRECOAT
SIZE D LEFT
+H12400575001401 1/1921281294805G09W
2019-07
zimmer

**Tibial Tray**

LOT 61989932 EDI: 00598002702 REF 5980-27-02
NEXGEN® COMPLETE KNEE SOLUTION
STEMMED TIBIAL COMPONENT PRECOAT
SIZE 2
+H124005980027021/2209061989932C12%
2022-03
zimmer

**Tibial Insert**

LOT 61935277 EDI: 90597002112 REF 90-5970-21-12
NEXGEN® COMPLETE KNEE SOLUTION
CRUCIATE RETAINING (CR) ARTICULAR SURFACE
SIZE STRIPED PURPLE / C-H 12 MM HEIGHT
USE WITH PLATE 1,2
+H12490597002112 1/1933461935277K118
2019-11
zimmer

**Patella**

LOT 61781610 EDI: 00597206126 REF 5972-61-26
NEXGEN® COMPLETE KNEE SOLUTION
ALL POLY PATELLA MICRO
SIZE 26 7.5 MM THICKNESS
+H124005972061261/1912061781610011U
2019-04
zimmer

**Cement**

LOT 74614301 CAT NO 00-1113-140-01
2016-01
PALACOS R+G RADIOPAQUE BONE CEMENT WITH GENTAMICIN 40.8 g METHYL ACRYLATE COPOLYMER, 20 ml METHYL METHACRYLATE MONOMER, 0.5 g GENTAMICIN. STERILE QTY-1
x2
Distributed by zimmer DOVER, OH 44622 U.S.A.

**Screws**

NS-9198 (1-07) BACK PART 3 ONLY

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 3 of 26

March 16, 2012

**To:** **Surgeons using the *NexGen*® Cruciate Retaining (CR) Micro Articular Surface Components**

**Subject:** URGENT CORRECTIVE ACTION NOTICE

**Affected Products: See attached list (Tables 1 & 2)**

## ZIMMER *NEXGEN* CRUCIATE RETAINING (CR) MICRO ARTICULAR SURFACE COMPONENTS

**Dear Surgeon:**

The purpose of this notification is to inform you of an implant component compatibility issue with the *NexGen* Cruciate Retaining (CR) Complete Knee System, how to prevent the issue, and what to do with patients who may have been implanted with an incompatible component combination.

Zimmer has received complaints where a *NexGen* CR **micro** articular surface was used with a **standard** CR femur, even though the compatibility chart indicates that these combinations are NOT approved. CR **micro** articular surfaces are used in approximately 2.2% of all *NexGen* CR procedures. It is believed that a CR micro articular surface and standard femoral component combination may have been used in some of those procedures. It is important to note, however, that there have been no reported failures due to this situation.

You are receiving this letter as a user of the NexGen CR System to ensure you refer to the compatibility chart and labeling and to make certain you are aware of the correct use combinations of CR **micro** articular surfaces with **standard** CR femoral components. The part numbers of the CR micro articular surfaces are listed on the last pages of this document (Tables 1 and 2). It is important to conform to the *NexGen* compatibility chart and package labeling for all combinations of available femoral components, tibial components and polyethylene articular surfaces for the *NexGen* CR implant system. The compatibility chart and labeling correctly reflects the approved combinations of available femoral components, tibial components, and polyethylene articular surfaces for the *NexGen* CR implant system. Please refer to the attached *NexGen CR* Compatibility Chart (Figure 1) for detailed information. The following is a summary of certain key information contained in that chart:

- Solid purple CR articular surfaces should not be used with standard CR femurs.
- Solid purple CR articular surfaces should only be used with A-B **Micro** Femurs that are compatible with 1-2 Tibias.
- Striped yellow CR articular surfaces should not be used with standard CR femurs.
- Striped yellow CR articular surfaces should only be used with A-B **Micro** Femurs that are compatible with 3-4 Tibias.
- Outside US micro femurs may be available in sizes C-E- thus micro articular surfaces may be used with **micro** surfaces A through E

**GHEZZI/KAISER 18**

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 6 of 26

NexGen Knee
Cruciate Retaining CR/CRA and CR-Flex Fixed

| Tibial Size | Femoral Size: A** MICRO | B MICRO | C | D | E | F | G | H** |
|---|---|---|---|---|---|---|---|---|
| 1-2 | AB/1-2 SOLID PURPLE | | CDEFGH/1-2 STRIPED PURPLE | | | | | |
| 3-4 | AB/3-4 STRIPED YELLOW | | CDEFGH/3-4 SOLID YELLOW | | | | | |
| 5-6 | AB/5-6† STRIPED GREEN | | CDEFGH/5-6 SOLID GREEN | | | | | |
| 7-10 | | | CDEFGH/7-10 SOLID BLUE | | | | | |
| Patella Size | Use micro size patellas with A-B micro size femoral components* | | | | 26mm (inset only) 29mm | 32mm 35mm | | |
| | Use standard size patellas with C-H standard femoral components | | | | 26mm (inset only) 29mm | 32mm 35mm | 38mm 41mm | |

* Do not use standard size patellas with A-B micro size femoral components.
** CR only
† Japan only

Figure 1: *NexGen* CR Compatibility Chart

The approved combinations are driven by differences in the condylar bearing spaces. The standard CR femur and articular surfaces have a condylar bearing space of 44 mm, while the CR micro femur and articular surfaces have a condylar bearing space of 36 mm.

**Risks**

An incompatible combination of articular surface and standard femoral component may lead to higher contact stresses at the medial and lateral edges of the articular surface. Therefore, Zimmer has determined that using standard and micro components in an incompatible combination could potentially lead to the following risks:

- The immediate risk could be that the knee cannot be properly balanced, thereby potentially leading to long term pain and instability.
- The long term risk of using a micro articular surface with a standard size femoral component could be increased wear of the polyethylene which may lead to pain, osteolysis, tibial loosening, instability, and revision surgery.

**Edge Loading Analysis**

Loading at the edge of the tibial polyethylene surface condition is much more prevalent in size combinations where the femoral component overhangs the articular surface. As the tibial plate and articular surface size increases, the amount of femoral component overhang decreases and loading at the edge of the tibial polyethylene surface is much less likely to occur. For example, the size E

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 7 of 26

standard CR femoral component overhangs the purple (Tibial 1, 2) micro articular surfaces by 7 mm (0.276") on each side of the polyethylene. The femoral component overhangs the striped yellow (Tibial 3, 4) articular surfaces by 3 mm (.116") per side. The size C standard CR femoral component only overhangs the purple micro articular surfaces by 3 mm (.118") per side and does not overhang the striped yellow articular surfaces. Thus, edge loading with a size C femoral and striped yellow articular surface is unlikely to occur. (See Appendix 1).

In general, patients receiving a size 1 or 2 tibial plate are lighter in weight and thus would be expected to place lower loads on the implant, lessening the risk of increased wear or fracture. This may minimize the potential complications due to loading at the edge of the tibial polyethylene surface in this patient group.

**Frequently Asked Questions**

**What should I tell my patients?**

- It is at the surgeon's discretion whether a patient should be called back to the clinic for examination and radiographic review to determine if there is any related problem. If the surgeon decides to call back a patient, the patient can be informed of the potential complications and advised of the need for annual physical examination and radiographs.

**Do patients already implanted with an incompatible component combination require revision?**

- It is at the discretion of the surgeon regarding any patient care. Zimmer recommends that the surgeon continue with their normal post-operative follow-up and monitor the patient, especially if they present with pain more than three months after the surgery took place. Zimmer does not want to unnecessarily alarm patients especially if they have a perfectly functioning implant and are not experiencing pain. Again, it is important to note that there have been no reported long-term failures due to the incompatible combination of standard and micro components.

**Is there information available to me or my patients from Zimmer?**

- A call support team is ready and equipped to handle your call; the contact number is [national country contact]

**Why are you emphasizing the use of the Compatibility Chart?**

- Zimmer received reports describing the use of incompatible combinations of its *NexGen* Cruciate Retaining (CR) Micro Articular Surface components. Because of these incidents, we want to answer any questions and prevent any possible future occurrences.

**Is the current labeling correct?**

- Yes, the compatibility chart and package labeling reflects the approved combinations of available femoral components, tibial components, and poly articular surfaces for the *NexGen* CR implant system.

**Your Responsibilities**

1. Review the attached Compatibility Chart and familiarize yourself with the appropriate component combinations.
2. Complete the acknowledgement certification and return to [national procedure – to national QA/RA Zimmer department]
3. For assistance, questions or assistance in notifying your accounts about this correction please contact Zimmer, National contact : sales rep / Marketing & product manager + contact number

This voluntary action will be reported to the U.S. Food and Drug Administration & International Competent Authorities. The FDA & Competent Authorities will also receive from Zimmer progress reports on the implementation of this recall. Your urgent cooperation is requested.

**Vigilance Reporting**: Any adverse reactions experienced with the use of these products, and/or quality problems may also be reported according to MEDDEV 2.12-1 Rev. 6 to the local health authority in your country.

## Product Scope

### Table 1

| Micro Articular Surfaces - Purple (Femur A,B - Tibia 1,2) | | | |
|---|---|---|---|
| **Part Number** | **Description** | **Part Number** | **Description** |
| 00-5952-020-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 10mm Height | 00-5972-020-09 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 9mm Height |
| 00-5952-020-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 12mm Height | 00-5972-020-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 10mm Height |
| 00-5952-020-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 14mm Height | 00-5972-020-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 12mm Height |
| 00-5952-020-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 17mm Height | 00-5972-020-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 14mm Height |
| 00-5952-020-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 20mm Height | 00-5972-020-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 17mm Height |
| 90-5952-020-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 17mm Height | 00-5972-020-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 20mm Height |
| 90-5952-020-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 20mm Height | 00-5976-020-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Purple 10mm Height |
| 00-5970-020-09 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 9mm Height | 00-5976-020-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Purple 12mm Height |
| 00-5970-020-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 10mm Height | 00-5976-020-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Purple 14mm Height |
| 00-5970-020-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 12mm Height | 00-5976-020-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Purple 17mm Height |
| 00-5970-020-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 14mm Height | 00-5976-020-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Purple 20mm Height |
| 00-5970-020-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 17mm Height | 00-5970-020-23 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 23mm Height |
| 00-5970-020-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 20mm Height | 00-5972-020-23 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple 23mm Height |
| 90-5970-020-09 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 9mm Height | 00-5976-020-23 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Purple 23mm Height |
| 90-5970-020-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 10mm Height | | |
| 90-5970-020-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 12mm Height | | |
| 90-5970-020-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 14mm Height | | |
| 90-5970-020-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 17mm Height | | |
| 90-5970-020-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Purple/A-E Micro 20mm Height | | |

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 10 of 26

**Table 2**

| Micro Articular Surfaces - Striped Yellow (Femur A,B - Tibia 3,4) | | | |
|---|---|---|---|
| Part Number | Description | Part Number | Description |
| 00-5952-031-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 10mm Height | 00-5972-031-09 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 9mm Height |
| 00-5952-031-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 12mm Height | 00-5972-031-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 10mm Height |
| 00-5952-031-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 14mm Height | 00-5972-031-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 12mm Height |
| 00-5952-031-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 17mm Height | 00-5972-031-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 14mm Height |
| 00-5952-031-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 20mm Height | 00-5972-031-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 17mm Height |
| 90-5952-031-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 17mm Height | 00-5972-031-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 20mm Height |
| 90-5952-031-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 20mm Height | 00-5976-031-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Striped Yellow 10mm Height |
| 00-5970-031-09 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 9mm Height | 00-5976-031-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Striped Yellow 12mm Height |
| 00-5970-031-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 10mm Height | 00-5976-031-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Striped Yellow 14mm Height |
| 00-5970-031-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 12mm Height | 00-5976-031-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Striped Yellow 17mm Height |
| 00-5970-031-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 14mm Height | 00-5976-031-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Striped Yellow 20mm Height |
| 00-5970-031-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 17mm Height | 00-5970-031-23 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 23mm Height |
| 00-5970-031-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 20mm Height | 00-5972-031-23 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow 23mm Height |
| 90-5970-031-09 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 9mm Height | 00-5976-031-23 | NexGen Cruciate Retaining (CR) Micro Articular Surface – AC Size Striped Yellow 23mm Height |
| 90-5970-031-10 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 10mm Height | | |
| 90-5970-031-12 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 12mm Height | | |
| 90-5970-031-14 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 14mm Height | | |
| 90-5970-031-17 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 17mm Height | | |
| 90-5970-031-20 | NexGen Cruciate Retaining (CR) Micro Articular Surface – Size Striped Yellow/A-E Micro 20mm Height | | |

APPENDIX 1



- Size B CR Femur
- Purple Micro Articular Surface



- Size B CR Femur
- Striped Yellow Micro Articular Surface



- Size C CR Femur
- Purple Micro Articular Surface



- Size C CR Femur
- Striped Yellow Micro Articular Surface

Layouts of Various Size Combinations for Standard CR Femoral Components and Micro CR Articular Surfaces

GHEZZI/KAISER 24

zimmer

# CERTIFICATE OF ACKNOWLEDGEMENT

By signing below, I acknowledge that I have received and understand the content of the letter subject to Zimmer Inc. Urgent Correction Notice for the NexGen® Cruciate Retaining (CR) Micro Articular Surface Compatibility

Printed Name____________________ Signature________________________

Date: ____/____/____

Hospital Name: ___________________________________

Hospital Address: ____________________________________________

Complete and return to national QA/RA Zimmer department]

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 13 of 26

REGARDING THE MATTER OF ARBITRATION BETWEEN:

| | |
|---|---|
| CHRISTINE GHEZZI,<br>Claimant,<br>and<br>KAISER FOUNDATION HEALTH PLAN, INC., KAISER FOUNDATION HOSPITALS and SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP,<br>Respondents. | ARBITRATION NO. 12135 |

ORIGINAL

DEPOSITION OF JOE BISANT

CARLSBAD, CALIFORNIA

JULY 23, 2014

ATKINSON-BAKER, INC.
COURT REPORTERS
(800) 288-3376
www.depo.com

REPORTED BY: GRACIELA WARNER, CSR NO. 9502
FILE NO.: A8051CA

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 14 of 26

A. No.

Q. What is the procedure for bringing the implants that the doctor needs to the surgical location?

MR. MEYER: Objection; calls for speculation.

MR. BENRUBI: Join; overbroad, vague.

MR. MEYER: You can answer if you know.

THE WITNESS: I guess -- what are you asking? In terms of how do they get to the hospital? How do they get into the room?

Q. BY MS. SKOLNICK: Right. How do they get from the Zimmer warehouse to the surgical location where they are going to need the implants.

A. We have drivers that work for our company.

Q. So they get loaded up on a truck?

A. Uh-huh.

Q. At the Zimmer warehouse?

A. Correct.

Q. And then they get transported over to the hospital?

A. Yes.

Q. Okay. So prior to that, the particular types of components have already been selected out as to what needs to go to the hospital; is that correct?

A. No, because it -- depending upon -- we don't send -- we send as much -- we send multiple inventory.

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 15 of 26

So it's not like we send a component.

The hospital has the NexGen System. It gets delivered to the hospital. If there's additions, then there's additions. If there's subtractions, then there's subtractions. But as a whole, that's how it goes.

Q. So you would have like every part then from, for example, let's say, the femoral components, all the way from A through G, would all go on this truck over?

A. If the preoperative planning decided that they were smaller than a D, yes.

Q. And then how are the components then moved from the truck into the operating room?

MR. MEYER: Objection; calls for speculation. You can answer if you know.

THE WITNESS: I don't know. I don't know how the couriers get them. I mean, we have a secured -- a secured room. It has a lock and stuff on it that our couriers -- you know, they are Zimmer employees so they have access to it. They drop them off there.

Q. BY MS. SKOLNICK: So at some point you arrive and all the contents of the truck are now in the operating room; is that correct?

A. None of the implants are in the operating room, no. They are in a separate location. When their sizes have been decided upon, we then go and retrieve those

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 16 of 26

sizes and bring them into the operating room.

Q. So the surgeon will tell you at some point during the surgery, "Get me a size D"?

A. Yes.

Q. And you go and retrieve it?

A. Yes.

Q. Okay. So is it fair to say that there's usually all of the components for the entire system, from the smallest size to the largest size that's made, back in that room waiting for you to go and retrieve if necessary?

A. Yes.

Q. Okay. Is there a log-out sheet for the implants?

Do you have to log them out when you are leaving Zimmer?

Or the people who are putting them onto the trucks, do they log them out?

A. That I don't know.

Q. Is there a log-in sheet for when you're returning implants back to Zimmer?

A. They know it's used, obviously, because they have to record -- they have to reorder the implants so we can get them restocked. But in terms of logged back in, I don't know how the whole dynamic of the office works

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 17 of 26

Q. BY MS. SKOLNICK: Have you seen this notice before?
A. I have.
Q. When did you first see it?
A. I couldn't tell you the date. I know of this.
Q. How did it come to you?
A. To be honest, I can't recall. I don't know if it was an email, maybe something dropped in my basket. I really don't -- I don't recall how I received it. Might have been a phone call initially, then a packet came. I don't really recall. I just know I'm familiar with this.
Q. Did you take any action in response to having received this notice?
A. We did.
Q. What action did you take?
A. We removed the solid purple polys from the ability to use a solid purple insert with a size 2/D femoral component or CR-D.
Q. How did you remove them? Do you mean you pulled them from the shelves so that they can't even be sold?
A. No, they can still be sold. If you use A or B, you could still use the solid purple. So we just moved -- orchestrated a way to know that you separated striped purple from solid purple.

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 18 of 26

Q. Did you contact any of the surgeons that you work with to tell them about this?

A. They would only be contacted if they put -- if they had implanted one that wasn't compatible. And that is not something I would do as a sales rep, that is not something we would do. From a day-to-day standpoint, I wouldn't have knowledge to know that. I would have to look through thousands of surgeries, to go through and see. So it's a daily thing. That was pulled through corporation, that they would, in turn, let the physician know.

Q. So other than taking steps so that it's not going to happen again in the future, you don't do anything with these notices yourself to contact surgeons to see whether somebody may have implanted -- has this particular issue going on?

A. The corporation would handle that. They would know before this would even get into my hand.

Q. Okay. At any time after this notice, did you ever receive any other notices related to the NexGen CR System, any of the components related to the system, not just the articular surface?

A. Not to my knowledge, no.

Q. Never anything related to the patella?

A. I have not seen anything personally, no.

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 19 of 26

EXAMINATION

BY MR. BENRUBI:

Q. Good afternoon, Mr. Bisant. I'm Gabriel Benrubi. I represent the Kaiser entities in this arbitration proceeding.

Can you pull out Exhibit 3, for us, please. I'm just going to go over here to your side. I just want to walk through this.

Now, for reference, the upper left-hand portion has this label "NexGen CR" on it. Okay? Now, this number, 90-5970-21-12, what is that?

A. That would be a reference number, CR number.

Q. And "Articular Surface," that is the component to which this label pertains?

A. Yes, sir.

Q. All right. Then it says "Size Striped Purple."

A. Uh-huh.

Q. Okay. That's the size of the product?

A. Uh-huh.

Q. And then there's a slash and then there is a "C-H"?

A. Uh-huh.

Q. What does the "C-H" stand for?

A. That means this base plates mates with femoral component size C to H.

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 20 of 26

Q. So when you say "base plate," what do you mean by "base plate"?

A. Femoral component. So this articular surface would have to match -- these things are married to each other, so a C to H femoral component and a 1 to 2 base plate.

Q. All right. So this articular component would be married to a size D femoral component and a size 2 tibial component?

A. Absolutely.

Q. Now, in regards to Exhibit 5 -- I know you haven't seen this before, but is there anything in here that suggests to you that a size 2 tibial component -- strike that.

Is there anything in here that suggests to you that a size 2 tibial component cannot be matched with the striped purple articular surface in the portion underlined?

A. No. The 2 would go with the purple or the striped purple. Either articular surface would be compatible with the size 2.

Q. Now, do you see anywhere on this exhibit that references the femur?

A. No.

Q. Okay. Now, Exhibit 4, which was produced by

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 21 of 26

A. Yes, sir.

Q. And that's 7.5 millimeters thick?

A. Yes, sir.

Q. Is there anything on this document that suggests to you that the size of the standard patella -- or strike that.

Is there anything on this Exhibit 6 that suggests to you that the size of the 26-millimeter standard patella is any different from the size of the micro patella that was underlined?

A. No, sir.

Q. Okay. Are you familiar with the 26-millimeter standard patella component in the CR NexGen prostheses?

A. Oh, yeah.

Q. Are you familiar with the 26-millimeter standard as well?

A. Yeah. The standard would be in the NexGen, so it's just the micro or the standard.

Q. Is there any difference, to your knowledge, of any dimension, any size, any configuration between the 26-millimeter micro patella and the 26-millimeter standard patella?

A. No, sir.

Q. Going back to Exhibit 3 -- I'm sorry to jump around here. On the -- again, this is -- the label is on

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 22 of 26

the upper left for orientation. And on the bottom left we have a number of these different -- appear to be labels that has Lot designation and numbers.

What are those, sir?

A. When you open the package, inside of the package on top of the implants, these are patient record labels. Basically, they will put these in the patient's chart for documentation or to bill insurance or whatever it may be. This follows the patient to know what products were put in them, yes.

Q. Again, it says "Size Striped Purple." Does that refer to the articular poly?

A. Yes, sir.

Q. And then slash C-H, that refers to the types of femoral components that could be matched with the striped poly?

A. Yes, sir.

Q. And Ms. Ghezzi's was a D within that line?

A. Yes, sir.

Q. And then the plate, that's the tibial component?

A. Yes, sir.

Q. And it's a 1 or a 2?

A. Correct.

Q. And Ms. Ghezzi had a 2?

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 23 of 26

A. Correct.

Q. Okay. In going to Exhibit 12, the "Corrective Action Notice," from your standpoint as a sales representative at Zimmer, what did this pertain to?

A. To be honest, when we get something like this, it's more of a heads-up to know, from what I was -- you know, from what I was saying earlier, this is a heads-up to let us know that we need to be cautious to not use incompatible polys with certain things.

Q. Was this just to emphasize the poly?

A. Yes.

Q. And what do you mean by "the poly"?

A. The articular surface. So basically it says -- when you read on the front, it talks about how, you know, if you use an A or B femur, you have to use the solid purple poly. If you used a C, D, the striped would have to come into play. The issue obviously comes to the point where either the striped purple or the purple will snap into a 1 or 2 base plate. So that's where the compatibility comes into play. That's why we use the striped purple on the patient due to the fact that it was a D component as opposed to an A or a B.

Q. Was the striped purple poly component subject to some part of the subject of the potential incompatibility problems?

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 24 of 26

A. No. It was the solid purple in this scenario.

Q. Okay. Then, going to the second page, we have this chart here. Can you walk me through this? For example, we have "Tibial Size 1-2."

And how does this -- how do you use this Tibial Size 1-2 relative to the femoral size and poly here, if you can walk us through that?

A. Yeah. So your sizes of your femoral components are right on the top and your tibias are down on the bottom. So 1-2, to figure out which poly you would use, you would basically say, "If I'm a 1 or 2 base plate and I want to be a C femur, what poly do I use?" Go straight down, match them -- solid purple or striped purple. If you were a 1, you would want to use an A, match them up -- solid purple.

Q. So if you were going to use a 2 tibia, according to this chart, and a D femur, you would match that up and you would have a striped purple poly?

A. Yes, sir.

Q. And then it says, "Patella Size. Use micro size patellas with A-B, micro size femoral components." Under that it says, "Use standard size patellas with C-H standard components."

Do you see that?

A. Uh-huh.

Case 3:15-cv-00106-JAH-RBB Document 10-1 Filed 03/23/15 Page 25 of 26

**FULBRIGHT & JAWORSKI L.L.P.**
JAN DODD (BAR NO. 214362)
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

]

Attorneys for Defendants Zimmer Holdings, Inc.; Zimmer, Inc.; Zimmer U.S., Inc.; and Joe Bisant

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE GHEZZI,<br><br>Plaintiff,<br><br>v.<br><br>ZIMMER HOLDINGS, INC; ZIMMER, INC.; ZIMMER U.S., INC.; ZIMMER PACIFIC; JOE BISANT; AND DOES 1 to 100,<br><br>Defendants. | Case No.<br><br>**DECLARATION OF JOE BISANT IN SUPPORT OF ZIMMER'S NOTICE OF REMOVAL**<br><br>[Filed Concurrently with Notice of Removal]<br><br>Complaint Filed: September 11, 2014 |

I, Joe Bisant, state as follows:

1. I am over the age of 18, and I am competent to make this declaration. I have personal knowledge of the facts provided and opinions stated herein, and if called upon as a witness, I could and would testify thereto.

2. I serve as a sales representative employee for Zimmer US, Inc.

3. I have been employed directly by Zimmer US, Inc., since June 1, 2012.

4. I was not present at the surgery of Christine Ghezzi ("Ms. Ghezzi") on or about September 13, 2012.

5. I did not deliver products to Ms. Ghezzi's surgery on or about September 13, 2012.

6. I never met or spoke with Ms. Ghezzi prior to the date of her surgery on or about September 13, 2012.

7. I have never been involved in the design, manufacturing, or labeling of Zimmer's medical device products.

8. I did not participate in the creation of the marketing or advertising materials that Zimmer disseminates with respect to its *NexGen* family of products.

9. I did not participate in the creation of the warnings that Zimmer prepares with respect to its *NexGen* family of products.

10. I did not participate in the determination by Zimmer or the U.S. Food & Drug Administration that certain products in the *NexGen* family are compatible with one another.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on: 1/14/15

[signature]

Joe Bisant

## PROOF OF SERVICE

I, Debi Tinsley, declare:

I am a citizen of the United States and employed by Faegre Baker Daniels LLP. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1990 South Bundy Drive, Suite 620; Los Angeles, CA 90025. On April 4, 2016, I served a copy of the within document(s):

**DEFENDANTS' NOTICE OF PRIOR RESPONSE TO PLAINTIFF'S "RENEWED" MOTION TO REMAND**

☒ by transmitting the document(s) listed above to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Following CM/ECF registrant(s):

☒ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Suzanne Skolkick
SKOLNICK LAW GROUP
2888 Loker Avenue East, Suite 110-F
Carlsbad, CA 92010
Telephone: 760-585-7092
Facsimile: 760-585-4676
E-mail: suzanne@skolnicklawgroup.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 4, 2016, at Los Angeles, California.

Debi Tinsley